**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

STATE BAR OF MICHIGAN,

      Plaintiff,

                                        Case No. 07-12599

v.                                   Hon. Gerald E. Rosen

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA.,

      Defendant.

_____/

**OPINION AND ORDER REGARDING**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT**

At session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on    __November 10, 2008__

PRESENT:   Honorable Gerald E. Rosen
                  United States District Judge

## I. INTRODUCTION

Plaintiff State Bar of Michigan commenced this action in this Court on June 18,

2007, seeking a declaration that Defendant National Union Fire Insurance Company of

Pittsburgh, PA. is obligated to provide insurance coverage for the costs Plaintiff incurred

in defending against lawsuits brought by two individuals who were denied admission to

the Michigan bar.[1]  The Court's subject matter jurisdiction rests upon the parties' diverse

_____

[1]At the time this suit was brought, Plaintiff also sought a declaration that another
Defendant insurer, Birmingham Fire Insurance Company of Pennsylvania, was obligated to
provide coverage as to an action brought against Plaintiff by a third individual.  By stipulated
order dated January 30, 2008, however, Plaintiff's claim against Defendant Birmingham was

citizenship.  *See* 28 U.S.C. § 1332(a)(1).

Through the present cross-motions, filed in March of 2008, each party seeks an award of summary judgment in its favor on Plaintiff's claims for declaratory and other relief.  In support of its motion, Defendant principally argues that Plaintiff failed to provide timely written notice of the claims made against it, as required under the relevant insurance policies as a condition precedent to Defendant's obligation to provide coverage. Defendant further contends that Plaintiff is not entitled to reimbursement of the defense costs it incurred without Defendant's prior written consent, and that the relevant policies exclude coverage for costs incurred by Plaintiff's in-house counsel.  In response, and in support of its cross-motion for summary judgment, Plaintiff does not dispute its failure to give the timely written notice called for under the pertinent policies, but it argues that principles of waiver and estoppel prevent Defendant from appealing to this lack of timely notice as a basis for denying coverage.

Having reviewed the parties' written submissions, the accompanying exhibits, and the record as a whole, the Court finds that the relevant facts, allegations, and legal arguments are adequately presented in these written materials, and that oral argument would not aid the decisional process.  Accordingly, the Court will decide the parties' cross-motions "on the briefs."  *See* Local Rule 7.1(e)(2), U.S. District Court, Eastern District of Michigan.  This opinion and order sets forth the Court's rulings on these

---

dismissed, and a third Defendant, AIG Casualty Company, also was dismissed from this suit. Thus, only Plaintiff's claims against Defendant National Union remain at issue.

motions.

## II. <u>FACTUAL BACKGROUND</u>

As noted, the three-count complaint in this case initially sought declarations that Plaintiff State Bar of Michigan was entitled to insurance coverage for the costs it incurred in defending against claims brought by three different individuals who had been denied admission to the Michigan bar. Although Plaintiff and the relevant Defendant insurer, Birmingham Fire Insurance Company of Pennsylvania, have resolved their dispute as to Count I of the complaint, the Court briefly recounts the underlying facts of this dispute, insofar as they are pertinent to Plaintiff's appeals to principles of waiver and estoppel.

### A. Count I — The *Dean* Litigation

In April of 2001, Plaintiff was served with a complaint brought by E. Stephen Dean against Thomas Byerley, who served as so-called "regulation counsel" for Plaintiff and was "responsible for the defense of claims and lawsuits arising out of the denial of admission to the State Bar of Michigan on grounds of character and fitness." (Defendant's Motion, Ex. I, Byerley Aff. at ¶ 3.) In his complaint, Dean alleged that Mr. Byerley had retaliated against his exercise of protected First Amendment rights by threatening to have him arrested and to deny him admission to the Michigan bar, and he further alleged that Mr. Byerley was liable for assault by virtue of having allegedly driven his car toward Dean as he picketed on the sidewalk near Mr. Byerley's home. (*See* Plaintiff's Motion, Ex. 1, *Dean* Complaint.) On April 6, 2001, Plaintiff's assistant counsel, Victoria Kremski, promptly notified Plaintiff's insurance broker, AON Risk

Services, about the *Dean* litigation, and she stated her intention to "represent Mr. Byerley in this matter." (Plaintiff's Motion, Ex. 2.)

Approximately four months later, on August 9, 2001, a claims adjuster for AIG Technical Services, Brian Seligman, responded to Ms. Kremski's letter, stating that his firm had been retained by Plaintiff's insurer, Defendant Birmingham Fire Insurance Company of Pennsylvania, to handle Plaintiff's claim for coverage, and that his review had revealed that Plaintiff was ineligible for coverage on a number of grounds. (*See* Plaintiff's Motion, Ex. 3.) First and foremost, this letter stated that Plaintiff was covered only for claims made against the organization during the policy period, and that the *Dean* litigation — which, as noted, was commenced in April of 2001 — was brought well outside the purported policy period of July 18, 1998 to July 18, 1999. (*Id.* at 2.) In addition, the letter cited a lack of information as to whether Mr. Byerley qualified as an "insured" under Plaintiff's policy, and it noted that Dean's assault claim and plea for punitive damages were excluded from coverage under the policy. (*Id.*)

Nearly four years later, on March 29, 2005, Plaintiff's general counsel, Janet Welch, wrote to Mr. Seligman of AIG, challenging his determination that Plaintiff was ineligible for coverage for the claims brought against the organization in the *Dean* litigation. (*See* Plaintiff's Motion, Ex. 10.)[2] In particular, Ms. Welch stated that Mr. Seligman's decision to deny coverage was based upon a "faulty premise," where the

_____

[2]As discussed below, this letter also challenged the decision to deny coverage as to the two claims that remain at issue in this case.

4

relevant policy period for Plaintiff's coverage actually encompassed three years, and not one, spanning from July 18, 1998 to July 18, 2001. (*Id.* at 2.) Because the *Dean* suit was filed within this period, Ms. Welch argued that Plaintiff was eligible for coverage of the costs incurred in defending this litigation. In a response dated July 7, 2005, counsel for the insurer, Defendant Birmingham, agreed that the *Dean* litigation had been commenced within the policy period, and that Plaintiff was entitled to reimbursement of most, but not all, of its costs in defending this suit. (*See* Plaintiff's Motion, Ex. 11.)[3]

**B.      Counts II and III — the *Dubuc* and *Lawrence* Suits**

In March of 2002, Dennis Dubuc brought suit against Plaintiff, challenging the denial of his application for admission to the Michigan bar. (*See* Plaintiff's Motion, Ex. 4.) Roughly a year later, in late February of 2003, another individual, Frank J. Lawrence, Jr., brought a similar suit against Plaintiff, alleging that various improprieties in the course of the review of his application for admission to the Michigan bar had led him to withdraw this application. (*See* Plaintiff's Motion, Ex. 5.) At the times these suits were commenced, Plaintiff was insured under not-for-profit individual and organization policies issued by Defendant National Union Fire Insurance Company of Pittsburgh, PA., with policy periods spanning from July 18, 2001 to July 18, 2003. (*See* Defendant's

---

[3]As noted, while Count I of Plaintiff's complaint challenges Defendant Birmingham's refusal to reimburse the entirety of the defense costs incurred by Plaintiff in the *Dean* litigation, the parties have resolved this dispute. Thus, Count I of the complaint has been dismissed, and Defendant Birmingham has been dismissed as a party, along with Defendant AIG Casualty Company.

Motion, Exs. A, B.)[4]

Under each of the two insurance policies in effect during the period in which the *Dubuc* and *Lawrence* suits were filed, Plaintiff was entitled to coverage for any "Loss arising from a Claim first made against the Organization during the Policy Period or the Discovery Period (if applicable) and reported to the Insurer pursuant to the terms of this policy." (Defendant's Motion, Ex. A, 7/18/2001 Policy at 1; Defendant's Motion, Ex. B, 7/18/2002 Policy at 1.)[5] A covered "Loss" was defined in the policies as including the costs incurred in defending against a claim. (7/18/2001 Policy at 3; 7/18/2002 Policy at 3.) As to the matter of notice, each of these policies provided:

> Notice hereunder shall be given in writing to the Insurer named in Item 8 of the Declarations at the address indicated in Item 8 of the Declarations. If mailed, the date of mailing shall constitute the date that such notice was given and proof of mailing shall be sufficient proof of notice . . . .
>
> (a)     The Insureds shall, as a condition precedent to the obligations of the Insurer under this policy, give written notice to the Insurer of any Claim made against an Insured as soon as practicable and either:

---

[4]Because National Union is the sole remaining Defendant in this case, the Court generally will refer to this insurer as "Defendant" throughout the remainder of this opinion, except as necessary to distinguish among the three insurers named as parties in the initial complaint.

[5]As this provision illustrates, the policies at issue in this case are "claims made" policies, under which eligibility for coverage is determined by reference to the date upon which a claim actually is *asserted* against the insured. So long as a claim against the insured is made during the policy period, it does not matter whether the underlying acts giving rise to this claim might have occurred outside the policy period. *See Stine v. Continental Casualty Co.,* 419 Mich. 89, 349 N.W.2d 127, 130 (1984) (explaining the difference between "claims made" and "occurrence" policies).

(1)  anytime during the Policy Year or during the Discovery Period (if applicable); or

(2)  within 30 days after the end of the Policy Year or the Discovery Period (if applicable), as long as such Claim is reported no later than 30 days after the date such Claim was first made against an Insured.

(7/18/2001 Policy at 9; 7/18/2002 Policy at 9.)

Plaintiff acknowledges that it did not provide written notice of the *Dubuc* and *Lawrence* suits to Defendant within the applicable "Policy Years" — *i.e.,* July 18, 2001 to July 18, 2002 for the *Dubuc* litigation, and July 18, 2002 to July 18, 2003 for the *Lawrence* litigation — or within 30 days after the end of these "Policy Years."  Rather, the first written notice claimed by Plaintiff is an April 2, 2004 letter sent by Plaintiff's general counsel, Janet Welch, to the organization's insurance broker, John Foster of Mourer Foster Insurance.  (*See* Plaintiff's Motion, Ex. 6.)  This letter states at the outset:

To keep you fully informed of the status of the cases currently pending against the State Bar of Michigan, we wish to provide you with a summary of the current litigation.  At the present time, there are three cases pending in the federal courts that could potentially affect the Bar.  At this time, however, we continue to believe that the probability of insurance exposure is very low.

(*Id.* at 1.)  Ms. Welch then summarized the developments and current status of the *Dean, Dubuc,* and *Lawrence* suits, and stated in closing that "[w]e hope this provides you with a full update of the status of these cases."  (*Id.* at 2.)  Nowhere in this letter did Ms. Welch refer to Plaintiff's possible entitlement to reimbursement of its defense costs in these

cases,[6] nor did she address the determination back in August of 2001 that Plaintiff was ineligible for coverage of the costs incurred in the *Dean* litigation.[7]

In letters dated March 14 and March 21, 2005, respectively, a claims adjuster for AIG Domestic Claims, Inc., Courtney Koepfler-Delia, notified Plaintiff that it was not entitled to coverage for the claims made against it in the *Lawrence* and *Dubuc* suits. (*See* Plaintiff's Motion, Exs. 8-9.) In each of these two letters, Ms. Koepfler-Delia identified the relevant policy period as extending from July 18, 2004 to July 18, 2005. Thus, she concluded in each instance that the claim in question "predates the policy and was not made and reported to us in the applicable Policy Period." (Ex. 8, 3/14/2005 Letter at 2; Ex. 9, 3/21/2005 Letter at 2.) In light of these determinations, Ms. Koepfler-Delia deemed it "[un]necessary to identify any additional bases which may also limit or

---

[6]In fact, the letter was wholly silent as to the extent of these costs to date.

[7]There is a dispute as to when Ms. Welch's April 2, 2004 letter actually was sent and received. The letter's intended recipient, Mr. Foster, testified that he and his agency did not receive the letter until October of 2004, and that, even then, he received the letter only by fax, and not through the mail. (*See* Plaintiff's Motion, Ex. 15, Foster Dep. at 14.) Plaintiff, on the other hand, points to internal April 14, 2004 e-mail messages exchanged between Ms. Welch and another State Bar employee, Elizabeth Lyon, in which Ms. Welch asked whether "this" (unspecified) letter was sent to the Mourer Foster agency and Ms. Lyon responded "[y]es." (Plaintiff's Motion, Ex. 7.) Yet, these messages, apart from being cryptic, are inadmissible hearsay, which the Court ordinarily may not consider in resolving a motion for summary judgment. *See* Fed. R. Civ. P. 56(e)(1); *see also U.S. Structures, Inc. v. J.P. Structures, Inc.,* 130 F.3d 1185, 1189 (6th Cir. 1997).

Notably, the April 2, 2004 letter itself includes a "cc" to Defendant at the address designated in the policy for providing notice to the insurer. Defendant, however, denies having received any notice of the *Dubuc* and *Lawrence* suits in April of 2004. Rather, it claims that it first learned of these suits in October of 2004, when Mr. Foster received Ms. Welch's letter and promptly notified Defendant. (*See* Defendant's Motion, Ex. D, 10/11/2004 Notice.)

preclude coverage." (*Id.*)

In the same March 29, 2005 letter in which she contested the denial of coverage as to the *Dean* litigation, Ms. Welch challenged Defendant's determination that Plaintiff was ineligible for reimbursement of its defense costs in the *Dubuc* and *Lawrence* suits. (*See* Plaintiff's Motion, Ex. 10.) In this letter, Ms. Welch asserted that Plaintiff had been "continuously insured by AIG from July 18, 1998 to present," and she cited policies issued to Plaintiff by Defendants Birmingham and National Union that encompassed the entire period from July 18, 1998 to July 18, 2004. (*Id.* at 1, 4.) Moreover, as to the assertions in Ms. Koepfler-Delia's letters that the *Dubuc* and *Lawrence* claims were "not made and reported in the applicable policy period," Ms. Welch stated that "[c]ounsel of record at the time, Thomas Byerley, indicated to me that he believes that notice was provided on the [*Dubuc* and *Lawrence*] matter[s] within days of [their] filing," but she conceded that "to date the State Bar has been unable to locate a copy of such notice letter[s]." (*Id.* at 3-4.)[8] In any event, Ms. Welch opined that "[r]egardless of whether notice was timely provided, it is clear that AIG has not been prejudiced by a possible late notice of claim," where the *Dubuc* and *Lawrence* cases both had been "continuously defended" by both in-house and outside counsel. (*Id.*)

Although, as noted, counsel for Defendant Birmingham ultimately agreed with Ms.

---

[8]Mr. Byerley testified at his deposition that, contrary to Ms. Welch's assertions in her March 29, 2005 letter, he did not provide written notice of the *Dubuc* and *Lawrence* suits to Defendant within a short time after those actions were filed, nor did he ever indicate to Ms. Welch that he had done so. (Defendant's Motion, Ex. H, Byerley Dep. at 31-32.)

Welch that Plaintiff was entitled to reimbursement of most of its defense costs in the *Dean* litigation, this same attorney, acting on behalf of Defendant National Union, informed Ms. Welch in two July 7, 2005 letters that coverage was not available for the claims in the *Dubuc* and *Lawrence* suits. (*See* Plaintiff's Motion, Exs. 12, 13.) While counsel agreed that Plaintiff was covered by Defendant's policies on the dates these cases were filed, he nonetheless opined that coverage was defeated by Plaintiff's failure to provide written notice until a year or more after the end of the relevant policy period — July 18, 2002 as to the *Dubuc* claim, and July 18, 2003 as to the Lawrence claim. Accordingly, counsel stated that "[b]ecause notice within the life of the policy [i]s a condition precedent to coverage, coverage is not available with respect to the [*Dubuc* and *Lawrence*] Claim[s]." (Ex. 12, *Dubuc* 7/7/2005 Letter at 2; Ex. 13, *Lawrence* 7/7/2005 Letter at 3.) Beyond this lack of timely notice, counsel stated that Plaintiff would not be entitled to reimbursement of its defense costs in light of its failure to secure Defendant's prior written consent before incurring these costs.

As noted, Mr. Byerley has acknowledged that he did not provide written notice to Defendant of the commencement of the *Dubuc* and *Lawrence* suits in March of 2002 and February of 2003, respectively. By way of explanation, Mr. Byerley has stated in an affidavit, and testified at his deposition, that he was told by an AIG employee, Yolanda Figueroa, that Plaintiff "should not bother to submit" any claims arising from the *Dubuc* and *Lawrence* suits, because these claims, like the claim arising from the *Dean* litigation, would be denied as "not . . . covered under the terms of the policy." (Defendant's

10

Motion, Ex. I, Byerley Aff. at ¶¶ 6-7; *see also* Plaintiff's Motion, Ex. 14, Byerley Dep. at 24-26.) In response, Defendant maintains that Mr. Byerley's assertions must necessarily be inaccurate in at least one respect, as Ms. Figueroa was not employed by Defendant or any of its affiliates or related companies until May of 2005, well after the conversation identified by Mr. Byerley would have taken place. (*See* Defendant's Motion, Ex. J, Figueroa Aff. at ¶ 2.)[9]

In light of Defendant National Union's decision to deny coverage for the *Dubuc* and *Lawrence* suits, as well as Defendant Birmingham's determination that Plaintiff was not entitled to reimbursement of the full amount of defense costs incurred in the *Dean* litigation, Plaintiff commenced this action in this Court on June 18, 2007, nearly two years after being informed of these adverse determinations. As noted at the outset, Plaintiff acknowledges that it did not provide written notice of the *Dubuc* and *Lawrence* suits within the time periods specified in the relevant policies, but it contends that it is excused from doing so under principles of waiver and estoppel.

## III. ANALYSIS

### A. The Standards Governing the Parties' Cross-Motions

Through the present motions, Plaintiff and Defendant each seek an award of

---

[9]In the course of discovery, Plaintiff sought to take Ms. Figueroa's deposition but Defendant objected, arguing that this witness had no relevant testimony to offer because she did not begin working for Defendant until well after the occurrence of the events giving rise to this suit. In an order issued after the parties had completed their briefing on their cross-motions for summary judgment, Magistrate Judge Pepe agreed with Defendant that the deposition of Ms. Figueroa should not go forward. Plaintiff has not filed any objections to this ruling.

summary judgment in its favor on the question of Plaintiff's entitlement to coverage of its defense costs in the *Dubuc* and *Lawrence* suits. Under the pertinent Federal Rule, summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

Although the parties disagree on a number of facts, their motions rest upon the premise that these factual disputes are immaterial to the resolution of this case in their favor and against the opposing party. As explained below, the Court agrees that certain key issues raised in the parties' motions are amenable to resolution as a matter of law — namely, the viability of Plaintiff's various appeals to principles of waiver and estoppel, without which it cannot establish an entitlement to coverage under the policies issued by Defendant. Accordingly, the Court now turns to these questions.

**B.      Defendant Is Not Precluded by Principles of Equitable Estoppel from Denying Coverage of the *Dubuc* and *Lawrence* Claims on the Grounds of Untimely Notice.**

As is evident from the foregoing account of the facts of this case, Plaintiff did not provide the timely written notice that, under the policies issued by Defendant, was a "condition precedent" to Defendant's obligation to provide coverage for the defense costs incurred by Plaintiff in the *Dubuc* and *Lawrence* suits. In particular, these policies called for written notice to be given "as soon as practicable" after a claim was made against the insured, and no later than 30 days after the end of the applicable policy period. (*See* Defendant's Motion, Ex. A, 7/18/2001 Policy at 9; Defendant's Motion, Ex. B, 7/18/2002

12

Policy at 9.)[10]  Yet, in this case, Plaintiff's initial written notice of the *Dubuc* and

*Lawrence* suits came several months, at a minimum, after the expiration of the relevant

policy periods.[11]  Thus, in order to establish its entitlement to coverage under Defendant's

policies, Plaintiff must identify a legally viable basis for excusing its admitted failure to

provide timely written notice in accordance with the pertinent policy provisions.

In one such effort to excuse its delayed notice, Plaintiff appeals to principles of

equitable estoppel.  As Plaintiff correctly observes, the Michigan courts have permitted

principles of estoppel to be invoked "as an equitable defense that prevents one party to a

contract from enforcing a specific provision contained in the contract."  *Morales v. Auto-*

*Owners Insurance Co.,* 458 Mich. 288, 582 N.W.2d 776, 779 (1998).[12]  "Estoppel arises

where a party, by representations, admissions or silence, intentionally or negligently

induces another party to believe facts, and the other party justifiably relies and acts on this

belief, and will be prejudiced if the first party is permitted to deny the existence of the

facts."  *Casey v. Auto Owners Insurance Co.,* 273 Mich. App. 388, 729 N.W.2d 277, 285

---

[10]Although Defendant's policies also permit notice to be given during a "Discovery Period" or within 30 days thereafter, Plaintiff does not contend that any such "Discovery Period" operates in this case to expand the period for giving written notice.

[11]Specifically, assuming that Plaintiff promptly sent the April 2, 2004 letter that constituted its first written notice of these cases, this letter post-dates by over 20 months the July 18, 2002 end of the policy period for the policy that would apply to the *Dubuc* litigation, and post-dates by over 8 months the July 18, 2003 expiration of the policy period for the policy that would provide coverage for the *Lawrence* litigation.

[12]The parties agree that the substantive law of Michigan governs Plaintiff's claims in this diversity action.

(2006) (internal quotation marks and footnote with citation omitted).[13]

Plaintiff cites three instances of alleged misrepresentations or omissions that, in its view, should operate to estop Defendant from denying coverage on grounds of untimely written notice. First, it claims that it justifiably relied on the denial of its request for coverage of its defense costs in the *Dean* litigation to conclude that any such claim arising from the *Dubuc* or *Lawrence* suits would also be denied on the same or similar grounds. Yet, leaving aside the fact that the denial in *Dean* was issued on behalf of a different insurer (Defendant Birmingham) and under a different policy (the one in effect between July 18, 1998 and July 18, 2001),[14] the very straightforward (if incorrect) reason given for

_____

[13]Beyond challenging Plaintiff's appeal to equitable estoppel on the merits, Defendant argues that Plaintiff has forfeited any opportunity to raise this issue by virtue of its failure to plead a theory of estoppel or waiver in its complaint. Yet, as Plaintiff correctly notes, its appeal to **equitable** estoppel must not be confused with a claim of ***promissory*** estoppel. While the latter provides a cause of action arising from the opposing party's promise, the former is available only as a defense or, as here, in aid of an effort to prevent the opposing party from defending its position by resort to a contractual provision. *See, e.g., Morales,* 582 N.W.2d at 779; *Hoye v. Westfield Insurance Co.,* 194 Mich. App. 696, 487 N.W.2d 838, 842-43 (1992). Because Plaintiff is not invoking principles of estoppel as a separate theory of recovery, there was no need for it to plead such a theory in its complaint.

Defendant also argues that Michigan law does not permit the application of principles of equitable estoppel or waiver where it would result in an expansion of insurance coverage beyond what is conferred in the underlying policy. *See, e.g., Lee v. Evergreen Regency Cooperative & Management Systems, Inc.,* 151 Mich. App. 281, 390 N.W.2d 183, 185-86 (1986). Here, however, Plaintiff seeks only to overcome a defense — *i.e.,* untimely notice — to coverage that the relevant policies otherwise would provide. As Plaintiff points out, the risk at issue — namely, that Plaintiff might be sued by a dissatisfied bar applicant — is one that its policies were intended to cover. Under these circumstances, the Court agrees that there is no *per se* bar to the application of principles of equitable estoppel.

[14]To be sure, it appears from the record that the two Defendant insurers, Birmingham and National Union, might well have been related or affiliated in some way, and that these two insurers both used an AIG affiliate for claims processing. Yet, there is no basis in the record for

denying the *Dean* claim belies any reasonable belief that this same reasoning would result in the denial of a subsequent claim arising from a later, different suit against Plaintiff. The *Dean* claim, after all, was denied on the ground that Plaintiff's policy with Defendant Birmingham was in effect only from July 18, 1998 to July 18, 1999, and had expired by the time the *Dean* litigation was commenced in April of 2001. (*See* Plaintiff's Motion, Ex. 3.) Yet, by the time the *Dubuc* suit was filed in March of 2002, Plaintiff was covered by a different policy issued by Defendant National Union, with an effective policy period spanning from July 18, 2001 to July 18, 2002.

Under this record, the Court cannot accept Plaintiff's contention that it justifiably relied on the denial of the *Dean* claim to "conclud[e] that the three claims [arising from the *Dean, Dubuc,* and *Lawrence* suits] were all in the same category of claims that were not covered." (Plaintiff's Motion, Br. in Support at 15.) There was nothing about the "category" or "type" of claim arising from the *Dean* litigation that led to its denial. Rather, the claim was denied purely as a function of the date when the litigation was commenced — namely, "after the Policy expired," (Plaintiff's Motion, Ex. 3 at 2), at least in the (incorrect) view of Defendant Birmingham's claims adjuster.   Presumably, then, a claim made against Plaintiff while one of its policies remained in effect would ***not*** have resulted in a denial on this same ground, and neither Defendant nor its claims adjuster

Plaintiff's apparent assumption that the policies issued by these two insurers were the same or similar in all relevant respects, such that the construction of the policy at issue in *Dean* would invariably carry over to and govern any claims arising from the *Dubuc* and *Lawrence* suits. Indeed, it is impossible to test this assumption, as neither party has produced a copy of the Birmingham policy that governed Plaintiff's claim for coverage arising from the *Dean* litigation.

made any representation that might lead to a different conclusion. Thus, the Court rejects Plaintiff's attempt to extrapolate from the denial of the *Dean* claim to the inevitable denial of any subsequent claim, regardless of when it arose or whether Plaintiff had entered into a different policy covering the time period in question.

For similar reasons, the Court finds that the alleged misrepresentation made to Thomas Byerley by Yolanda Figueroa — or some other unknown employee or representative of Defendant or its claims adjuster — cannot support the application of equitable estoppel. According to Mr. Byerley, Ms. Figueroa advised him that Plaintiff "should not bother to submit" any claims "similar" to the *Dean* claim, "because they also would not be covered under the terms of the policy." (Defendant's Motion, Ex. I, Byerley Aff. at ¶ 7.) Again, however, the pertinent "terms of the policy" — *i.e.,* the policy period during which claims made against Plaintiff would give rise to coverage — were not immutable across all policies issued by the Defendant insurers to Plaintiff, but instead differed with the issuance of each successive policy. In this crucial respect, then, the claims arising from the *Dean, Dubuc,* and *Lawrence* suits were not "similar," and Mr. Byerley could not have justifiably relied on any alleged assertion that these claims all were subject to denial on the same ground.[15]

---

[15]The Court also notes the absence of any claim that Mr. Byerley was misled as to the specific policy provision that Defendant cites in support of its denials of the *Dubuc* and *Lawrence* claims — namely, the requirement of timely written notice. Because there is no evidence of a misrepresentation as to this particular requirement, Plaintiff's appeal to equitable estoppel necessarily must sweep far more broadly, and must altogether excuse any lack of compliance with any and all policy provisions that govern the submission of a claim. This means, for example, that Ms. Figueroa's alleged statement about the futility of submitting any

Moreover, the Michigan courts have held that principles of equitable estoppel do not apply where, as here, the two parties had equal access to the true facts. As recently explained by the Michigan Court of Appeals, "if the prejudiced party had the same access to the true facts as the party to be estopped [—] in other words, where plaintiff had a feasible means to discover the truth [—] the prejudiced party cannot contend that he or she was influenced by the other party." *Sisk-Rathburn v. Farm Bureau General Insurance Co.,* 279 Mich. App. 425, ___ N.W.2d ___, 2008 WL 1885771 (Mich. Ct. App. June 26, 2008); *see also Robertson v. Allstate Insurance Co.,* No. 274305, 2007 WL 4553630, at *5 n.8 (Mich. Ct. App. Dec. 27, 2007); *cf. Sprague v. General Motors Corp.,* 133 F.3d 388, 404 (6th Cir. 1998) (applying a similar rule under federal common law, and reasoning that a party's "reliance can seldom, if ever, be reasonable or justifiable if it is inconsistent with the clear and unambiguous terms of plan documents available to or furnished to the party"). This principle applies with full force here, where Mr. Byerley, a trained attorney, would not have needed to proceed beyond the very first pages of Plaintiff's several policies with Defendant to see that they encompassed different policy periods, (*see* Defendant's Motion, Exs. A, B), and hence would produce different coverage decisions depending on whether a particular suit was commenced against Plaintiff within or outside of a given policy period. Plainly, he had no need to rely on Ms.

---

claims "similar" to the *Dean* claim would excuse a delay in written notification much longer than the 8- and 20-month delays in this case, or even an outright failure to submit any sort of claim to Defendant before proceeding directly to court for a declaration of coverage. The theory of estoppel advocated by Plaintiff here is troubling for its lack of limiting principles.

Figueroa, or any other representative of the Defendant insurers, to understand and interpret this most basic feature of Plaintiff's "claims made" policies — namely, that coverage is available for those claims made against Plaintiff during the policy period.[16]

Finally, Plaintiff fares no better in its contention that equitable estoppel arises from Defendant's failure to inquire, in connection with the annual renewal of Plaintiff's policy, whether Plaintiff was aware of any pending claims against the organization or its officers or directors. At some points in the past, it appears that Plaintiff was asked such questions in the renewal paperwork issued by its insurers. Yet, when it came time to renew the policy that expired in July of 2002, the form supplied by Defendant did not elicit this information. (*See* Plaintiff's Motion, Ex. 21.) Similarly, in the paperwork provided by Defendant for renewal of the policy that was due to expire in July of 2003, this "pending claims" question had been crossed out, and no response was required. (*See* Plaintiff's Motion, Ex. 22 at 4.)[17] Plaintiff argues that if Defendant had asked about pending claims at the time of policy renewal, Plaintiff would have provided this information and the

---

[16]Indeed, if Plaintiff is to be believed on this point, one can only wonder why Mr. Byerley did not begin to question whether Plaintiff should continue to pay premiums — which, according to the record, totaled between $15,958 and $28,000 per year — for policies which, he was told, would not cover any claims "similar" to the *Dean* claim. If Mr. Byerley truly believed that any litigation brought by a disgruntled bar applicant against Plaintiff at any time invariably would fail to qualify as a claim made against Plaintiff during an applicable policy period, it surely would have behooved him to consider cancelling Plaintiff's insurance.

[17]One of Defendant's employees, Mary Jo Picone, explained at her deposition that an insured typically is asked to provide this "pending claims" information only "the first time" it purchases a policy. (Defendant's Response, Ex. P, Picone Dep. at 102.) Thereafter, Defendant assumes that it is aware of any pending claims, in light of the policy provisions that require the insured to report such claims as they arise. (*Id.*)

requirement of written notice would have been satisfied.

Under Michigan law, however, "[s]ilence or inaction may form the basis for an equitable estoppel only where the silent party had a duty or obligation to speak or take action." *West American Insurance Co. v. Meridian Mutual Insurance Co.,* 230 Mich. App. 305, 583 N.W.2d 548, 550 (1998). While Plaintiff asserts that Defendant had a "contractual right to receive any information it desired as a precondition to agreeing to insure" Plaintiff, (Plaintiff's Motion, Br. in Support at 18), it is another matter to show — and Plaintiff makes no effort to demonstrate — that Defendant had a ***duty or obligation*** to inquire about pending claims at the time of policy renewal. Similarly, while Plaintiff suggests that Defendant "voluntarily and intentionally relinquished" its contractual right to this information when it failed to request it in its renewal paperwork, (*id.* at 19), Plaintiff fails to suggest how this might operate as a waiver or forfeiture of Defendant's separate contractual right to timely written notice of claims. Accordingly, the Court finds no basis in the record for applying principles of equitable estoppel to overcome Plaintiff's admitted failure to provide timely written notice of the *Dubuc* and *Lawrence* suits.

## C. Defendant's Purported Delay in Determining the Availability of Coverage for the *Dubuc* and *Lawrence* Suits Was Not Prejudicial, and Thus Did Not Operate to Estop Defendant from Denying Coverage.

In addition to its broader appeal to principles of equitable estoppel, Plaintiff also seeks to invoke a more particularized form of estoppel that has been applied by the Michigan courts in the specific context of insurance coverage disputes. In particular, Plaintiff cites a line of Michigan cases which hold, in its view, that an insurer may be

19

estopped from denying coverage if it fails to timely respond to a request for coverage. As discussed below, however, the Court finds no factual or legal basis for applying such a theory of estoppel here.

Accepting, for the moment, that Plaintiff has accurately characterized the Michigan case law cited in its motion, Plaintiff submits that the posited estoppel arises from a delay of nearly a year between its first written notice of the *Dubuc* and *Lawrence* suits on April 2, 2004 and Defendant's March 14 and 21, 2005 letters stating that coverage was unavailable for these suits. Yet, as noted earlier, there is no cognizable evidence in the record that Plaintiff actually sent — much less than Defendant or any agent of this insurer actually received — notice of the *Dubuc* and *Lawrence* suits on or around April 2, 2004. While Plaintiff has produced a letter bearing this date and addressed to its insurance broker, John Foster of Mourer Foster Insurance, (*see* Plaintiff's Motion, Ex. 6), Mr. Foster testified at his deposition that he did not receive this letter until a copy arrived via fax in October of 2004, (*see* Plaintiff's Motion, Ex. 15, Foster Dep. at 14). Defendant, in turn, states that it did not learn of the *Dubuc* and *Lawrence* suits until Mr. Foster submitted a notice of claim dated October 11, 2004. (*See* Defendant's Motion, Ex. D.) Under this view of the record, there was a five-month delay between Plaintiff's notice of the suits and Defendant's denial of coverage, rather than the one-year delay claimed by Plaintiff.

While Plaintiff appeals to the venerable "mailbox rule" as establishing a presumption of delivery of its April 2, 2004 letter within a few days after the date shown

on this correspondence, this presumption arises only where there is ***evidence of mailing*** on a particular date. In the case cited by Plaintiff, for instance, the court pointed to evidence that the defendant insurer had put the letter in question "through the postage meter machine in the Company's regular course of business," and that "[t]he envelope was postmarked July 8, 1948, and was duly deposited in the mail." *Smith v. Pacific Mutual Life Insurance Co.,* 192 F.2d 248, 250 (6th. Cir. 1951); *see also Ewing v. Klatt,* 235 Mich. 536, 209 N.W.2d 838, 839 (1926) (stating the "general rule" that "proof that a letter properly addressed was mailed with full postage paid raises a rebuttable presumption that it was received by the addressee"); *Allstate Insurance Co. v. Harris,* No. 199187, 1998 WL 1997516, at *1 (Mich. Ct. App. Jan. 16, 1998) ("The presumption that a letter has been received depends on the addressor establishing by a preponderance of the evidence that the letter was sent, and the burden rests on the addressor to initially establish the fact that the letter was properly mailed.").

Here, in contrast, no such evidence of mailing appears in the record. Plaintiff has not offered, for example, the testimony or affidavit of anyone claiming to have personal knowledge that the letter in question actually was mailed on or around April 2, 2004. Instead, Plaintiff relies solely on what purports to be an April 14, 2004 e-mail exchange between the author of the April 2 letter, Janet Welch, and another State Bar employee, Elizabeth Lyon, in which Ms. Lyon confirms that an unspecified "[l]etter to Mourer F[o]ster" had been sent. (*See* Plaintiff's Motion, Ex. 7.) This document as presented, however, is inadmissible hearsay that the Court may not consider in resolving a motion

for summary judgment, *see* Fed. R. Civ. P. 56(e)(1); *see also U.S. Structures, Inc. v. J.P.*

*Structures, Inc.,* 130 F.3d 1185, 1189 (6th Cir. 1997), and Plaintiff has not identified any

hearsay exception that might permit consideration of this e-mail exchange. Thus, the

Court cannot indulge Plaintiff's assumption that it gave written notice of the *Dubuc* and

*Lawrence* suits in April of 2004.[18]

    If, as the record indicates, Plaintiff instead gave its first written notice of these

suits on or around October 11, 2004, then about five months passed between Defendant's

receipt of this notice and its March 14 and 21, 2005 letters denying coverage for the two

suits. As Plaintiff acknowledges in its motion, the Michigan Court of Appeals held in one

case that a four-month delay between the commencement of a suit against the insured and

the insurer's issuance of a reservation of rights letter was, "as a matter of law, not an

unreasonable length of time." *Fire Insurance Exchange v. Fox,* 167 Mich. App. 710, 423

N.W.2d 325, 327 (1988). In contrast, the Michigan Supreme Court held that an insurer

---

[18]It also is worth noting that the April 2, 2004 letter did not include any language that could be construed as a request for coverage. Instead, its stated purpose was to keep the addressee, Mr. Foster, "fully informed of the status of the cases currently pending against the State Bar of Michigan," and to "provide [him] with a summary of the current litigation." (Plaintiff's Motion, Ex. 6, 4/2/2004 Letter at 1.) Moreover, the letter stated near the outset that "we continue to believe that the probability of insurance exposure is very low." (*Id.*)

    The letter's recipient, Mr. Foster, evidently was uncertain about its purpose, as he testified to his recollection that he contacted Ms. Welch upon receiving the letter and inquired "what her objective was" in sending it. (Plaintiff's Motion, Ex. 15, Foster Dep. at 14.) As a result of this conversation, Mr. Foster had the impression that Plaintiff intended to "handl[e] the suit[s] internally." (*Id.*) Mr. Foster further testified that he advised Plaintiff that it was "not prudent" to proceed in this fashion because "the contract would not allow them to conduct their affairs that way and then turn it over as a claim," but he was told that "it's our internal decision to handle it that way." (*Id.* at 14-15.)

had acted unreasonably by issuing a reservation of rights letter over two years after suit was brought against the insured. *See Meirthew v. Last,* 376 Mich. 33, 135 N.W.2d 353, 356 (1965). Plainly, the five-month delay here is far more akin to the four-month delay that was deemed "not . . . unreasonable" in *Fox* than to the insurer's two-year delay in *Meirthew. See also Harris,* 2001 WL 672596, at *2 (finding that a reservation of rights letter provided "timely notice" to the insured where it was issued "approximately five months" after an underlying tort suit was filed against the insured).

More importantly, the case law to which Plaintiff looks for support of its claim of unreasonable delay does not stand for the proposition Plaintiff seeks to ascribe to it. Simply stated, the cases cited by Plaintiff do not purport to establish any sort of general rule requiring that an insurer must act upon a request for coverage within a "reasonable" time. Rather, each of these decisions arose from and addressed a particular situation that was common to those cases but is not presented here — namely, where an insurer undertakes the defense of an insured, and then later issues a reservation of rights letter indicating that coverage might not be available. *See Allstate Insurance Co. v. Keillor,* 450 Mich. 412, 537 N.W.2d 589, 590 n.2 (1995); *Meirthew,* 135 N.W.2d at 354-55; *Fox,* 423 N.W.2d at 326; *Cozzens v. Bazzani Building Co.,* 456 F. Supp. 192, 201 (E.D. Mich. 1978). As observed by the Michigan Court of Appeals, the "general rule" that emerges from these cases is as follows: "that an insurer which undertakes the defense of an insured while having actual or constructive knowledge of facts which would allow avoidance of liability will be deemed to have waived its right to avoid coverage unless

reasonable notice is served to the insured of the possible disclaimer of liability." *Fox,* 423 N.W.2d at 326 (citing *Meirthew* and other cases). Similarly, upon reviewing the Michigan Supreme Court's decision in *Meirthew,* Judge Pratt of this Court explained:

> It is, then, the opinion of this Court that *Meirthew* stands for the proposition that when there arises the substantial possibility that the carrier's duty to defend will come into conflict with its duty to pay under the policy, and when the carrier fails to notify its insured of the nature and existence of the possible conflict clearly and promptly, the duty to defend assumes the ascendancy and the carrier is estopped to deny its liability.

*Cozzens,* 456 F. Supp. at 198.

This principle is wholly inapposite here. Defendant never undertook, or even promised to provide, a defense on Plaintiff's behalf in the *Dubuc* and *Lawrence* suits.[19] Nor, more generally, is there any evidence that Defendant ever represented to Plaintiff that it was entitled to coverage for these two suits. To the contrary, Plaintiff insists that its former in-house counsel, Thomas Byerley, was told by one of Defendant's representatives that any claims arising from these suits were sure to be denied. This case, then, does not present the concern that *Meirthew* and its progeny seek to address — namely, that an insured might be prejudiced by an insurer's exercise of control over the defense of an action without adequate and timely notice that the insurer might ultimately disclaim its liability for coverage and withdraw its representation of the insured.

---

[19]In fact, Plaintiff agrees that Defendant owed no duty to defend under the policies it issued to Plaintiff. Rather, Plaintiff acknowledges that "the policies put the actual obligation of defense on the State Bar itself," (Plaintiff's Motion, Br. in Support at 21), leaving Defendant with the obligation only to reimburse the costs Plaintiff has incurred in providing its own defense in the two suits.

Because Defendant never indicated that Plaintiff's defense costs would be covered, nor attempted to exert any control over the defenses in the *Dubuc* and *Lawrence* suits, Plaintiff cannot claim any prejudice arising from Defendant's delayed decision to deny coverage for these suits. Indeed, whether this delay lasted five or eleven months, Plaintiff has not identified any prejudice it suffered while awaiting Defendant's determination. Plaintiff has not suggested, for example, that its defenses in the *Dubuc* and *Lawrence* suits might have been conducted differently if it had known that its requests for coverage would be denied. To the contrary, the suits were well under way before Plaintiff gave its first written notice of them, and Plaintiff asserts that it has defended the two suits "successfully," (Plaintiff's Motion, Br. in Support at 21), despite its lack of knowledge whether Defendant would reimburse the costs of these defenses.

Even under the reservation-of-rights case law relied upon by Plaintiff, such an absence of prejudice generally precludes the application of principles of estoppel arising from an insurer's delay. *See, e.g., Action Auto Stores, Inc. v. United Capitol Insurance Co.,* 845 F. Supp. 417, 424 (W.D. Mich. 1993). While this case law indicates that a presumption of prejudice may arise where an insurer fails to issue a reservation of rights letter and "continues to defend although it possesses sufficient information concerning a possible policy exclusion," *Multi-States Transport, Inc. v. Michigan Mutual Insurance Co.,* 154 Mich. App. 549, 398 N.W.2d 462, 465 (1986), such is not the case here. Thus, even if the principles of these cases were carried over to the present action, there would be no basis for concluding that Defendant should be estopped to deny coverage by virtue

25

of the purported delay in its decisions as to the *Dubuc* and *Lawrence* claims.

**D.    The Reasons Given in Defendant's Initial Denial Letters Do Not Preclude Its Reliance on Untimely Notice as the Basis for Denying the *Dubuc* and *Lawrence* Claims.**

In its next effort to avoid the consequences of its untimely written notice of the *Dubuc* and *Lawrence* suits, Plaintiff turns to principles of waiver as well as estoppel. Specifically, Plaintiff cites the rule that "[g]enerally, once an insurance company has denied coverage to an insured and stated its defenses, the insurance company has waived or is estopped from raising new defenses." *Kirschner v. Process Design Associates, Inc.,* 459 Mich. 587, 592 N.W.2d 707, 709 (1999). In Plaintiff's view, these principles preclude Defendant's reliance on the grounds set forth in its counsel's July 7, 2005 letters, where these letters purportedly advanced new reasons for denying coverage that were not set forth in Defendant's initial March 14 and 21, 2005 letters announcing its decisions to deny the *Dubuc* and *Lawrence* claims. Once again, however, the Court finds that this claim of waiver lacks both factual and legal support.

As an initial matter, it is factually inaccurate to say that the issue of Plaintiff's untimely written notice was raised for the first time in the July 7, 2005 letters, and that the earlier March 14 and 21, 2005 letters relied upon wholly different grounds for the denial of the *Dubuc* and *Lawrence* claims. In each of the two March letters, Defendant quoted in full the provision in section 7 of the policy requiring that written notice of a claim be given within the applicable policy period or within 30 days thereafter. (*See* Plaintiff's Motion, Ex. 8, 3/14/2005 Letter at 2; Plaintiff's Motion, Ex. 9, 3/21/2005 Letter at 2.)

26

Each of these letters then stated, at two different points, that coverage for the claim at issue was precluded on the ground, among others, that "the claim was not . . . reported during the applicable policy period." (3/14/2005 Letter at 1, 2; 3/21/2005 Letter at 1, 2.) Thus, these initial letters plainly did raise the coverage defense of untimely notice.

Indeed, not only did the March 14 and 21 letters cite the absence of timely reporting as a ground for Defendant's denial of the *Dubuc* and *Lawrence* claims, but it is quite clear that ***Plaintiff*** read and understood these letters in precisely this way. In her March 29, 2005 response to these letters, Plaintiff's general counsel, Janet Welch, expressly acknowledged and recounted Defendant's statement in its letters that coverage had been "denied on the basis that the claim was not made ***and reported*** in the applicable policy period." (Plaintiff's Motion, Ex. 10, 3/29/2005 Letter at 3 (emphasis added).) Ms. Welch then sought to refute this latter determination, asserting that "[c]ounsel of record at the time, Thomas Byerley, has indicated to me that he believes that notice was provided . . . within days" after the *Dubuc* and *Lawrence* suits were filed. (*Id.*)[20] She further opined that "[r]egardless of whether notice was timely provided," Defendant had "not been prejudiced by a possible late notice of claim," where the two cases "ha[d] been continuously defended" by in-house and outside counsel. (*Id.* at 3-4.) Given all of these statements in Ms. Welch's letter addressing the issue of timely notice, Plaintiff can hardly

---

[20]As noted earlier, Mr. Byerley has testified that he did not provide written notice of the *Dubuc* and *Lawrence* suits to Defendant within a short time after those actions were filed, and he denied ever indicating to Ms. Welch that he had done so. (Defendant's Motion, Ex. H, Byerley Dep. at 31-32.)

contend that it was unaware of this ground for Defendant's denial of the *Dubuc* and *Lawrence* claims.

To be sure, Defendant's initial March 14 and March 21 letters undoubtedly engendered some confusion through their misstatements of the applicable policy periods within which the *Dubuc* and *Lawrence* claims must have been "made and reported." In each of these letters, Defendant identified the pertinent policy period as running from July 18, 2004 to July 18, 2005 — *i.e.,* the time span covered by the policy in effect at the time the two claims were ***reported*** to Defendant — rather than July 2001 to July 2002 (for the *Dubuc* claim) or July 2002 to July 2003 (for the *Lawrence* claim) — *i.e.,* the time spans covered by the policies in effect at the time the two suits were ***commenced*** against Plaintiff. As Defendant's counsel tacitly conceded in his July 7, 2005 letters to Plaintiff, the applicable policy periods were misidentified in Defendant's earlier March 14 and 21 letters, and the relevant policies to consider in determining the availability of coverage for the *Dubuc* and *Lawrence* suits were the policies in effect at the time these suits were filed. (*See* Plaintiff's Motion, Exs. 12, 13.) Nonetheless, he adhered to the conclusion in the earlier letters that written notice had not been timely provided during the applicable policy periods or within 30 days thereafter.[21]

_____

[21]Notably, if Defendant's March 14 and 21 letters were correct in their identification of the applicable policy period as running from July 2004 to July 2005, the written notice received by Defendant in October of 2004 would have qualified as notice given during the relevant policy period. Tellingly, Ms. Welch did not make this point in her March 29, 2005 response to this letter, but instead addressed what she (correctly) perceived to the pertinent issues — namely, whether Plaintiff had provided notice within a short time after the *Dubuc* and *Lawrence* suits were filed, and whether coverage should be available even in the absence of such notice. Thus,

In short, the July 7, 2005 letters from Defendant's counsel did not raise any new *grounds* for the denial of the *Dubuc* and *Lawrence* claims, but instead advanced different *reasoning* in support of one of the grounds expressly cited in the earlier letters — namely, Plaintiff's failure to report the claims during the relevant policy periods. None of the case law cited by Plaintiff supports the proposition that an insurer should be deemed under these circumstances to have waived an otherwise applicable policy exclusion or defense, or that it should be estopped from amending or supplementing its initial explanation for invoking a particular exclusion or defense. Rather, in each case in which a waiver was found, the insurer sought for the first time *during litigation* to rely upon an exclusion or defense that it had failed to raise at the time it denied coverage under its policy with the insured. *See Smith v. Grange Mutual Fire Insurance Co.,* 234 Mich. 119, 208 N.W. 145, 147 (1926) (finding a waiver where the defendant insurer never "questioned the validity of the policy until it filed its plea and notice in this case"); *Michigan Township Participating Plan v. Federal Insurance Co.,* 233 Mich. App. 422, 592 N.W.2d 760, 767 (1999) (holding that the defendant insurer had waived a policy defense by failing to plead it in its answer to the complaint or raise it in its summary judgment motion, but instead raising this defense for the first time in a response to the plaintiff's summary judgment motion); *Goldstein v. Lincoln National Life Insurance Co.,* 970 F. Supp. 598, 605 (E.D. Mich. 1997) (finding that issues of fact remained as to whether the defendant insurer had

---

while the March 14 and 21 letters could have led to confusion as to the applicable policy periods, Ms. Welch's response does not evidence any such confusion.

waived a policy defense by raising it for the first time in litigation, and not at the time that it announced its decision to deny coverage). Such is not the case here, where Defendant cited a lack of timely notice in its very first correspondence to Plaintiff regarding the *Dubuc* and *Lawrence* claims, and then reiterated this basis for denial of coverage in follow-up letters sent well before Plaintiff brought the present suit.

In any event, even if the case law cited by Plaintiff were broadly construed as reaching the circumstances presented here, Plaintiff's appeal to principles of waiver and estoppel would be defeated by the absence of any prejudice resulting from Defendant's purportedly changing reasons for denying the *Dubuc* and *Lawrence* claims. The Michigan Court of Appeals invoked precisely this reasoning in one of the cases cited by Plaintiff, *Smit v. State Farm Mutual Automobile Insurance Co.,* 207 Mich. App. 674, 525 N.W.2d 528, 532 (1994), holding that principles of waiver and estoppel were inapplicable because the insured "was not prejudiced by [the defendant insurer's] belated assertion of a different provision purportedly excluding coverage," but instead occupied precisely the same position she was in "when coverage was initially denied" on a different ground. *See also Keillor,* 537 N.W.2d at 590 n.2 (finding that the plaintiff insurer was not estopped from relying on an exclusion that was not mentioned in a reservation of rights letter but was instead raised for the first time in the insurer's second amended complaint, where the insurer "did not delay unreasonably in asserting the exclusion and the defendant [insured] has suffered no prejudice from the short delay"); *Brackx v. Minnesota Mutual Life Insurance Co.,* 954 F. Supp. 1189, 1193 (E.D. Mich. 1997) (rejecting the plaintiff

insured's appeal to estoppel arising from the defendant insurer's misleading statements about the purported unimportance of a policy's requirement of notice, where the insured did not "identify any real prejudice" resulting from these statements and the time for giving notice had already passed).

In this case, even assuming, contrary to the evidence, that Defendant truly altered its position between its initial letters in March of 2005 and its counsel's subsequent July 7, 2005 correspondence, Plaintiff does not even purport to suggest any prejudice it might have suffered in the brief period between these two sets of letters. In its first letters in March of 2005 and at all times thereafter, Defendant consistently advised Plaintiff that no coverage was available for the *Dubuc* and *Lawrence* suits. Plaintiff's general counsel clearly understood from the outset that these denials were based in part upon a lack of timely notice, as she argued in her response to the March 2005 letters that the requisite notice either was given or should be excused. Under this record, Plaintiff cannot show any detrimental reliance or prejudice arising from Defendant's purported change in position between March and July of 2005.

## E. Defendant Need Not Show Prejudice Resulting from Plaintiff's Untimely Notice.

As its final argument in support of its motion for summary judgment and in opposition to Defendant's cross-motion, Plaintiff contends that Defendant may not rely on untimely notice as a ground for denying the *Dubuc* and *Lawrence* claims absent a showing that it was prejudiced by this delayed notice. In support of this posited

requirement of prejudice, Plaintiff points to the pronouncements of the Michigan Supreme Court that "[m]ere delay in giving the required notice does not work a forfeiture because such provisions are construed to require notice within a reasonable time," and that "[p]rejudice to the insurer is a material element in determining whether notice is reasonably given." *Wendel v. Swanberg,* 384 Mich. 468, 185 N.W.2d 348, 353 (1971). Yet, as Defendant correctly observes, the Michigan Court of Appeals has expressly distinguished *Wendel* and declined to require a showing of prejudice under circumstances like those presented here, and Plaintiff has not identified any basis for this Court to deviate from these Michigan appellate court rulings on matters of state law.

*Wendel* has been distinguished on two grounds that are relevant here. First, in *Schubiner v. New England Insurance Co.,* 207 Mich. App. 353, 523 N.W.2d 635, 636 (1994), the Michigan Court of Appeals affirmed a trial court ruling that an insured had failed to provide written notice of a claim within the relevant policy period, as required to trigger coverage under the "claims made" policy at issue in that case. In so holding, the court expressly "decline[d] to apply the general insurance principle that the insurer must show prejudice where it is claiming lack of notice," reasoning that this principle had been "developed in the context of 'occurrence' insurance policies" and should not be carried over to "claims made" policies. *Schubiner,* 523 N.W.2d at 636.[22]

---

[22]In drawing this distinction between "claims made" and "occurrence" policies, the court cited the Michigan Supreme Court's discussion in *Stine, supra,* 349 N.W.2d at 130-31, of the differences between these two types of policies. Likewise, in the briefs filed in this case, the parties devote a fair amount of attention to *Stine,* as well as the statute construed by the Court in that case, Mich. Comp. Laws § 500.3008.

As noted earlier, the policies at issue in this case are "claims made" policies. By its explicit terms, then, *Schubiner* defeats Plaintiff's contention that Defendant must show prejudice before it may invoke the notice provision of its "claims made" policies as a ground for denying coverage. This Michigan appellate court decision "serve[s] as a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *Ziebart International Corp. v. CNA Insurance Cos.,* 78 F.3d 245, 250-51 (6th Cir. 1996) (internal quotation marks and citations omitted). Thus, the burden is on Plaintiff to explain why *Schubiner* should not control here.

Plaintiff suggests two grounds for viewing *Schubiner* as an impermissible departure from, rather than an appropriate elucidation of, the governing state law as articulated by the Michigan Supreme Court in *Wendel.* First, Plaintiff cites the decision in *Sherlock v. Perry,* 605 F. Supp. 1001, 1005 (E.D. Mich. 1985), in which the court held that *Wendel's* requirement of prejudice was applicable to a "claims made" policy. Yet,

---

Beyond its helpful discussion of the differences between "claims made" and "occurrence" policies, this Court views *Stine* as providing little or no guidance here. In that case, the Court held that Mich. Comp. Laws § 500.3008 applies to "claims made" and "occurrence" policies alike, to the extent that the statute excuses delayed notice in cases where "notice could not reasonably have been given to the insurer within the specified number of days after the policy expired." *Stine,* 349 N.W.2d at 134. Yet, neither this statute nor *Stine's* reading of it is of any assistance to Plaintiff here, where Plaintiff does not contend, and the record does not suggest, that it would not have been "reasonably possible to give . . . notice [of the *Dubuc* and *Lawrence* claims] within the prescribed time." Mich. Comp. Laws § 500.3008. Consequently, because this statute does not operate here to excuse Plaintiff's untimely notice, *Stine's* holding that the statute reaches "claims made" policies is unavailing to Plaintiff in this case.

because *Sherlock* predates *Schubiner,* the district court had no occasion or opportunity to suggest how the court in *Schubiner* might have erred in distinguishing between "occurrence" and "claims made" policies.

Nonetheless, Plaintiff contends, in reliance on a portion of the reasoning in *Sherlock,* that *Schubiner's* distinction between "occurrence" and "claims made" policies cannot be squared with a proper reading of the Michigan Supreme Court's decision in *Wendel.* In particular, Plaintiff urges *Sherlock's* interpretation of the relevant portion of *Wendel* as resting upon the Michigan Supreme Court's construction of Mich. Comp. Laws § 500.3008. *See Sherlock,* 605 F. Supp. at 1005 (opining that "[s]everal courts have construed this [statute] to provide the insured with broad protection against the forfeiture of a claim because of delayed notice," and citing *Wendel's* requirement of a showing of prejudice as arising from this reading of the statute). To the extent that *Wendel* holds that a showing of prejudice is mandated under Mich. Comp. Laws § 500.3008 — a statute which, by its terms, does not distinguish between "occurrence" and "claims made" policies, and which has been held to apply to policies of both sorts, *see Stine,* 349 N.W.2d at 134 — the court in *Schubiner* would not be at liberty to depart from this reading of the statute by Michigan's highest court.

A close reading of *Wendel* reveals otherwise, however. In enumerating several "pertinent legal principles" that controlled its decision in that case, the Court cited Mich. Comp. Laws § 500.3008 solely for the principle that "[n]otice to an authorized agent is

notice to the insurer." *Wendel,* 185 N.W.2d at 352.[23]  In addressing the requirement to show prejudice, in contrast, the Court did not cite this or any other statute.  Rather, after first observing that "[p]rovisions in liability insurance contracts requiring the insured to give the insurer immediate or prompt notice of accident or suit are common, if not universal," the Court then looked exclusively to its own prior decisions for the propositions:  (i) that "[m]ere delay in giving the required notice does not work a forfeiture because such provisions are construed to require notice within a reasonable time," and (ii) that "[p]rejudice to the insurer is a material element in determining whether notice is reasonably given."  *Wendel,* 185 N.W.2d at 352-53.

Because the pertinent portion of *Wendel* does not rest upon the construction of a statute that applies to "occurrence" and "claims made" policies alike, the Michigan Court of Appeals remained free in *Schubiner* to draw a distinction between these types of policies, and to read *Wendel*'s requirement of prejudice as limited to the "occurrence" policy at issue in that case.  While one could question whether it is appropriate to draw such a distinction, or whether the requirement of prejudice should apply to "claims made"

---

[23]The first clause of this statute mandates that a provision to this effect be included in liability insurance policies.  *See* Mich. Comp. Laws § 500.3008.  The second clause — the one that is relevant here — then dictates that all such policies include

> a provision that failure to give any notice required to be given by such policy within the time specified therein shall not invalidate any claim made by the insured if it shall be shown not to have been reasonably possible to give such notice within the prescribed time and that notice was given as soon as was reasonably possible.

Mich. Comp. Laws § 500.3008.

as well as "occurrence" policies,[24] this Court lacks the authority to second-guess the soundness of a Michigan appellate court's interpretation of state law, absent some concrete basis for concluding that the Michigan Supreme Court would rule otherwise. *See Ziebart International,* 78 F.3d at 251. Having considered and rejected Plaintiff's proposed grounds for disregarding *Schubiner,* the Court finds that it is bound to follow the ruling in that case that an insurer need not show prejudice in order to deny coverage under a "claims made" policy for lack of timely notice.

The Michigan Court of Appeals also has identified a second ground for declining to impose *Wendel's* requirement of prejudice here. In *Dellar v. Frankenmuth Mutual Insurance Co.,* 173 Mich. App. 138, 433 N.W.2d 380, 382-83 (1988), the court rejected the argument that the defendant insurer had to show prejudice in order to rely upon the failure of the plaintiff insured to file a timely proof of loss in accordance with the terms of her policy. In so ruling, the court distinguished *Wendel* as part of a line of cases addressing "insurance contracts without specific time limits for notice or proof of loss." *Dellar,* 433 N.W.2d at 383. Because the policy at issue in *Dellar* had a fixed 60-day limit for providing proof of a loss, the court reasoned that *Wendel* was inapplicable, and that an insured's failure to comply with such a specific time limit barred "recovery on a claim

---

[24]The Court hastens to add that there are arguments to be made on either side of these questions. In *Stine,* 349 N.W.2d at 131, for instance, the Court observed that "claims made" policies typically feature lower premiums because of an insurer's improved ability to predict the limits of its exposure, and this enhanced ability to predict exposure presumably would be threatened by a relaxed requirement of notice. Nonetheless, the Court expresses no view as to the relative merits of the positions for and against a requirement of prejudice under "claims made" policies.

without regard to whether the insurer is prejudiced by such failure." 433 N.W.2d at 383; *see also Pieces of 8, Inc. v. Insurance By Burley Agency Inc.,* No. 233904, 2002 WL 31447078, at *1 (Mich. Ct. App. Nov. 1, 2002) (following *Dellar* and distinguishing *Wendel* on this same ground); *Minott v. General Electric Credit Auto Lease, Inc.,* No. 91-1182, 1991 WL 263132, at *3 (6th Cir. Dec. 10, 1991) (citing *Dellar* and other cases for the proposition that "where the insurance policy contains a defined time period for notice, Michigan courts have not applied a prejudice requirement").

The ruling of the Michigan appellate court in *Dellar* applies with full force here. In this case, as in *Deller,* the policies at issue imposed specific time limits for giving notice of a claim — *i.e.,* they required that written notice be given during the policy period or within 30 days thereafter. In *Wendel,* 185 N.W.2d at 352, in contrast, the insured was under an obligation to "immediately forward" to the insurer the papers served upon her in the underlying lawsuit. In the absence of a specific time limit, the Michigan Supreme Court reasoned that such a provision should be "construed to require notice within a reasonable time," and that "[p]rejudice to the insurer" should be considered in "determining whether notice is reasonably given." *Wendel,* 185 N.W.2d at 353.[25]

---

[25]As Plaintiff observes in its response to Defendant's motion, this absence of a specific time limit is typical of "occurrence" policies, which often provide "that a claim must be reported 'as soon as practicable.'" (Plaintiff's Response Br. at 7.) Under a "claims made" policy, in contrast, the usual strict reporting requirement enables an insurer to "know[] exactly what its exposure is, at least in terms of the nature and number of 'claims made,'" because the insurer's "liability will be limited to claims actually made during the term of the policy for which the premium is computed." *Stine,* 349 N.W.2d at 131. By acknowledging this difference between "occurrence" and "claims made" policies, Plaintiff has identified a sensible basis for the distinctions drawn by the Michigan courts in *Schubiner* and *Dellar.*

Because the deadline for notice in this case was specific and not indefinite, there is no need to construe this deadline in accordance with *Wendel's* standard of reasonableness, with its attendant consideration of prejudice to the insurer. Rather, the Court holds, in accordance with *Dellar,* that Defendant need not show prejudice in order to rely on Plaintiff's lack of timely notice as a basis for denying the *Dubuc* and *Lawrence* claims.

## IV. <u>CONCLUSION</u>

For the reasons set forth above,

NOW, THEREFORE, IT IS HEREBY ORDERED that Defendant's March 31, 2008 motion for summary judgment (docket #33) is GRANTED. IT IS FURTHER ORDERED that Plaintiff's March 28, 2008 motion for summary judgment (docket #32) is DENIED.

s/Gerald E. Rosen_____
United States District Judge

Dated: November 10, 2008

I hereby certify that a copy of the foregoing document was served upon counsel of record on November 10, 2008, by electronic and/or ordinary mail.

s/LaShawn R. Saulsberry____
Case Manager